UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD JAMES BAUMAN,

      Plaintiff,                                  Civil Action No. 08-12617

v.                                                HON. JOHN CORBETT O'MEARA
                                                     U.S. District Judge
                                                     HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

**PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 3, 2005, alleging disability as of November 19, 2004 (Tr. 40-42, 273-275). After the initial denial of his claim, Plaintiff requested an administrative hearing, held April 19, 2007 in Flint, Michigan (Tr. 290 ). Administrative Law Judge ("ALJ") Bennett Engelman presided. Plaintiff, represented by Michael Hall, testified, as did Vocational Expert ("VE") Mary Williams (Tr. 291-306, 306-309). On August 7, 2007, ALJ Engelman found that although Plaintiff was unable to return to his past relevant work, he could perform a limited range of exertionally light work (Tr. 16). On June 6, 2008, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on June 19, 2008.

**BACKGROUND FACTS**

Plaintiff, born November 26, 1959, was age 48 when ALJ Engelman issued his decision (Tr. 40). He completed 11th grade and worked previously as a concrete finisher/pool installer (Tr. 70, 293). His application for benefits alleges disability as a result of a lower back condition (Tr. 63).

    **A.**    **Plaintiff's Testimony**

Plaintiff began his testimony by stating that he received a Workers' Compensation settlement of $155,000 approximately one month prior to the hearing (Tr. 291). Continuing his testimony, Plaintiff reported that he had not worked since November 2004 (Tr. 291). He stated that he was formerly employed as a concrete finisher for pool installers, adding that in addition to pouring cement, he installed pumps and filters (Tr. 292-294).

Plaintiff alleged that lower back pain prevented him from standing for long periods,

estimating that he regularly experienced level "eight" pain on a scale of one to ten (Tr. 295). He testified that he was unable to drive more than short distances or perform any yard work (Tr. 296 ). He reported coping with back pain by soaking in hot water and taking Vicodin, noting that he had also begun to experience shoulder pain and left arm numbness (Tr. 297). Plaintiff indicated that his previous uninsured status precluded back surgery that had been "kind of recommended" by his treating sources (Tr. 299). He opined that difficulty changing positions prevented him from performing any work (Tr. 299).

Plaintiff alleged that his back condition had worsened since November 2004, testifying that the pain, now radiating into his shoulder, neck, arm, and lower extremities, required him to recline four to five times for up to an hour each day (Tr. 302). He reported that he could sit in one position for a maximum of 20 minutes and lift a maximum of 20 pounds (Tr. 302). He also reported limitations in bending and twisting, adding that his condition created sleep disturbances (Tr. 303). Plaintiff testified Vicodin made him nauseated, stating further that a recently prescribed high blood pressure medication caused fatigue (Tr. 304). He stated that he had "been feeling depressed" lately, attributing his mood to a possible side effect of the blood pressure medication (Tr. 304). He stated that he had recently been prescribed Prozac, but he had discontinued using the anti-depressant after one month because it because it made him "feel weird" (Tr. 305). Plaintiff estimated that he was unable to sit (as a passenger) in a car for more than "50 miles" (Tr. 305).

**B.     Medical Evidence**

**1. Treating Sources**

Plaintiff, seeking emergency treatment following his November 19, 2004 workplace injury, was prescribed Skelaxin, Naproxen, and Tylenol #3 (Tr. 184, 186, 187, 252). A

lumbar spine x-ray showed mild hypertrophic changes but the absence of a fracture (Tr. 194, 269). The next month, Howard J. Hammett, D.O. noted that Plaintiff experienced continued low back pain but exhibited a "good range of motion" in the lower extremities (Tr. 181). Physical Therapy notes indicate that Plaintiff experienced pain both sitting and standing (Tr. 198). Also in December 2004, Plaintiff reported to Dr. Hammett that despite compliance with therapy, he had not experienced any relief following his injury the previous month (Tr. 172). Dr. Hammett ordered an MRI of the lumbar spine (Tr. 172).

The MRI of the lumbar spine, taken in January 2005, showed spondylotic degenerative disk desiccation at L3-L4 through L5-S1 with discogenic endplate sclerosis at L5-S1, L5-S1, disc herniation "impinging on the intraspinal right S1 nerve root," and uncovertebral osteophytic spur "impinging on the intraforaminal left L4 nerve root" (Tr. 192-193, 267-268). Also in January 2005, Mary Crankright, P.A., examined Plaintiff, noting that although he experienced "some radicular pain down the right leg" as a result of the November 2004 disc herniation, the left leg discomfort had been "resolved" (Tr. 169). Crankright reissued work restrictions precluding the lifting more than 30 pounds and repetitive bending, twisting, and stooping (Tr. 170, 173, 177, 179, 182, 185).

### 2. Non-treating Sources

In May 2005, Marvin Neil Bleiberg, M.D., performed an independent medical evaluation relating to Plaintiff's application for Workers' Compensation (Tr. 242-245). Noting imaging studies showing a herniated disc with impingement on the right S1 nerve root, Dr. Bleiberg concluded that Plaintiff could "return to work, but . . . clearly requir[ed] work restrictions" consisting of no lifting over 20 pounds, a sit/stand/walk option as needed along with limitations on bending, twisting, kneeling, stooping, and crouching (Tr. 244-245).

In January 2006, neurologist Jeffrey R. Levin M.D., also found that Plaintiff should be restricted to lifting 20 pounds or less, and "no repetitive twisting or bending" with a sit/stand option, and "no exposure to vibrating tools or machines"[1] (Tr. 240).

In March 2006, Siva Sankaran, M.D., performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 229-232). Dr. Sankaran noted that Plaintiff had been diagnosed with a "lumbar sprain" after straining his back at work (Tr. 229). The consultive physician, commenting that Plaintiff had not undergone treatment since October 2005, observed that he did not require the use of a cane, but exhibited "moderate restriction of motion of the lumbar spine and clinical evidence of S1 radiculopathy in the right leg" (Tr. 232). The following month, a Physical Residual Functional Capacity Assessment completed on behalf of the SSA found that Plaintiff retained the ability to lift 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and push and pull without limitations of the upper extremities (Tr. 220). Plaintiff's ability to push and pull with the lower extremities was deemed *limited* (Tr. 220). The Assessment limited Plaintiff to *occasional* climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling, with a complete preclusion on all ladder, rope, or scaffold climbing (Tr. 221). The Assessment, finding the absence of manipulative, visual, or communicative limitations, found that Plaintiff should avoid concentrated exposure to vibration (Tr. 222-223). The reviewing physician concluded that Plaintiff's allegations of limitation were only "partially credible" (Tr. 218).

---

[1]Dr. Levin's April 11, 2006 deposition testimony, taken on behalf of Plaintiff's claim for Workers' Compensation benefits (Tr. 71-112) essentially restates his January 2006 findings (Tr. 239-240). Likewise, Dr. Bleiberg's July 13, 2005 deposition testimony reiterates his May, 2005 conclusion that although Plaintiff was incapable of returning to his former job, he could resume full-time work with the above-described lifting, postural, and environmental restrictions (Tr. 116-166).

### C. Vocational Expert

VE Mary Williams classified Plaintiff's former work as a concrete finisher/pool installer as semiskilled at the heavy exertional level[2] (Tr. 70, 306). The ALJ, citing Dr. Bleiberg's deposition testimony (Tr. 133) posed the following hypothetical question:

> "Let's assume that we have a 47 year old claimant with [an] 11th grade education and the past work history we just described. . . . [N]o lifting, pushing, or pulling over 20 pounds. Alternate . . . sitting, standing and walking as needed. And limit[ing] bending, twisting, kneeling, stooping, and crouching to . . . . a rare basis, only as absolutely necessar[y]. . . . [L]ight work with a sit/stand, walk option. . . . . Let's assume frequent use of the hands but not constant. No overhead reaching?"

(Tr. 307). The VE replied that based on the above limitations, Plaintiff could perform the jobs of an inspector (4,700 jobs in the regional economy); assembler (5,000); and machine operator (3,000) (Tr. 307-308). The VE testified further that Plaintiff's alleged need to recline multiple times each day, or, distractions as a result of pain and/or depression for more than 25 percent of the workday precluded all competitive employment (Tr. 308-309).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairment of degenerative disc disease of the lumbar spine , but that the condition did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

No. 4 (Tr. 12). Citing Dr. Bleiberg's assessment (Tr. 133) the ALJ concluded that although Plaintiff could not perform his past relevant work, he retained the following Residual Functional Capacity ("RFC"):

> "[T]o perform a significant range of light work that requires no lifting, pushing or pulling over twenty pounds, alternating between sitting, standing and walking as needed and bending, twisting, kneeling, stooping and crouching to occasional and on a rare basis only as absolutely necessary"

(Tr. 13). The ALJ also supported his determination by noting that Plaintiff's allegations regarding the "intensity, persistence and limiting effects" of his condition were "not entirely credible" (Tr. 15). The ALJ noted that Plaintiff had been treated with exclusively conservative measures and that "objective studies fail[ed] to document evidence of any significant decline in the [his] lower back condition" (Tr. 14). The ALJ also noted that Dr. Levin's January, 2006 deposition was consistent with the finding that Plaintiff could perform a significant range of exertionally light work (Tr. 14).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without

interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A. Depression

Plaintiff argues first that the ALJ erred by failing to consider how the combined effect of his back condition and depression impacted his residual functional capacity. *Plaintiff's Brief, Docket #11* at 5. Citing *Blankenship v. Bowen,* 874 F. 2d 1116, 1123-4 (6th Cir. 1989), he notes that despite his testimony that he was depressed, the administrative opinion contained no reference to the condition. *Brief* at 6.

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Contrary to Plaintiff's argument, the omission of depression, either in the hypothetical question to the VE or in the administrative opinion's RFC, does not presents grounds for remand. First, Plaintiff's argument that the ALJ erred by failing to consider his "depression" in combination with his back problems is most obviously defeated by the dearth of evidence supporting his allegations of a mental health disorder. Second, while Plaintiff apparently contends that his passing reference to "feeling depressed" was sufficient for depression's inclusion as a "severe" impairment

at Step Two, he did not allege workplace limitations as a result of depression. Plaintiff's entire testimony regarding depression consists of the following: "Well, the Vicodin's kind of mak[ing] me sick to my stomach. And, I don't know, I've kind of been feeling depressed lately. I don't know if it's from the, that medication or the, the high blood pressure medication." (Tr. 304). Significantly, Plaintiff's counsel did not develop this testimony or mention limitations as a result of depression in his closing statement (Tr. 309-310).

Third, Plaintiff did not allege that he had been diagnosed with a depressive disorder or had sought alternative medication or mental health counseling, testifying that he had been prescribed Prozac only five weeks before the hearing and had discontinued its use in the week prior to testifying (Tr. 305). His August 2005 application for benefits makes no mention of a depressive disorder and in January 2006, he denied that he experienced conditions other than back problems (Tr. 63, 239). Notes from a March 2006 consultive examination also note the absence of a "psychiatric history" (Tr. 230). In the absence of more than a passing reference to short-term Prozac use, the ALJ was not obliged to consider the impact of "depression" in combination with Plaintiff's back problems. Accordingly, the ALJ's omission of depression from the hypothetical question, Step Two findings, and RFC, well-supported by the transcript, does not present grounds for remand.

### B. The Credibility Determination

I also disagree with the overlapping argument that the ALJ failed to explain his reasons for discounting Plaintiff's allegations of limitation. *Brief* at 5-8. As required by SSR 96-7p, the ALJ first acknowledged that Plaintiff experienced limitations as

a result of the November, 2004 back injury.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986).  The ALJ's finding that Plaintiff experienced degenerative back conditions as a result of his November, 2004 injury is well-supported by the record.

Second, as also required by SSR 96-7p, the ALJ considered Plaintiff's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms" of his condition.  *Id.*   Although Plaintiff claims pursuant to C.F.R. 404.1529(c)(3); 416.929(c)(3) that the ALJ neglected to consider all of the factors to be considered in making a credibility determination, a review of the administrative opinion indicates otherwise.[3]

First, the ALJ permissibly discounted Plaintiff's allegations of disability by noting that they stood at odds with both treating and consultive source findings. While the medical record strongly suggests that Plaintiff was unable to return to his work as a concrete finisher, none of his treating sources ever opined that he was unable to perform *any* work.  In January 2005, a treating physician's assistant, noting

---

[3]C.F.R. 404.1529(c)(3); 416.929(c)(3) lists the factors to be considered in making a credibility determination:

"(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

an MRI from the same month that showed a herniated disc, found that Plaintiff could nonetheless perform work with lifting requirements of 30 pounds or less (Tr. 170). Similar to this finding, consultive examinations performed on behalf of Plaintiff's claim for Workers' Compensation showed that Plaintiff could return to work if limited to lifting 20 pounds and given a sit/stand/walk option (Tr. 240, 244-245).

Moreover, Plaintiff's testimony and daily activities statement supports the ALJ's finding that his allegations of disability were only partially credible. While Plaintiff alleged that his condition severely curtailed his household and recreational activities, he admitted that he continued to drive short distances and could ride as a passenger for up to "50 miles" (Tr. 296, 305). Plaintiff's alleged need to recline for up to five hours each day (unsupported by any objective medical testing or treating opinions) is also undermined by the fact that he continued to prepare simple meals, help his girlfriend with household chores on at least an intermittent basis, shop, and handle his finances (Tr. 57, 58, 302). His allegations of walking difficulties stand at odds with a consultive examiner's observation that he did not require the use of a cane (Tr. 232). Although Plaintiff testified to disability-level exertional and postural limitations, the same consulting physician observed that he sat through a March, 2006 examination without discomfort (Tr. 230).

Finally, while Plaintiff faults the ALJ for failing to list the factors found in C.F.R. 404.1529(c)(3), *supra,* at fn 3, he offers no support for the contention that the ALJ was required to include them verbatim in the administrative opinion. Because the ALJ's credibility determination is both procedurally and substantively adequate, it is entitled to deference of this Court. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d

921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'"). For identical reasons, I disagree with Plaintiff's final argument that his alleged need to recline multiple times each day and inability to stay on task should have been included with the hypothetical limitations to the VE. *Brief* at 8. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

In closing, the Court notes that its recommendation to uphold the administrative decision is not intended to trivialize Plaintiff's limitations as a result of his November, 2004 back injury. Nonetheless, the administrative finding that Plaintiff was not disabled from *all* work, both procedurally and substantively adequate, falls well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 10, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 10, 2009.

s/G.Wilson
Judicial Assistant